**W. S. POWERS, Appellant,**

v.

**Mary Sue HARRINGTON et al., Appellees.**

No. 7030.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 19, 1957.

Rehearing Denied Dec. 17, 1957.

See, also, Texas Western Securities, Inc., v. Harrington, Tex.Civ.App., 308 S.W. 2d 237.

Upton, Upton, Baker & Griffis, San Angelo, L. F. Burke, Longview, for appellant.

H. M. Harrington, Jr., Longview, for appellee.

FANNING, Justice.

This is an appeal by W. S. Powers from an order overruling his plea of privilege. Mary Sue Harrington and Nancy Kay Harrington, residents of Gregg County, Texas, sued W. S. Powers, a resident of Harris County, Texas, together with North American Union Life Insurance Company, a corporation, and Texas Western Securities, Inc., a corporation, which defendant corporations also filed pleas of privilege to be sued in Tom Green County, Texas. Plaintiffs allege that Powers, acting for his own benefit and as agent for the defendant corporations, had by certain fraudulent representations made in Gregg County, Texas, induced the plaintiffs to purchase 400 shares of stock of North American Life Insurance Company at $7 per share or a total of $2,800, when the stock in truth and in fact was worth less than $1 per share or approximately $1 per share. The plea to be sued in Harris County, Texas, by Powers was seasonably filed and controverted on the ground that Powers had committed a fraud on the plaintiffs in Gregg County, Texas, within the meaning of Exception

No. 7, Article 1995, Vernon's Tex.Civ.St. Powers' plea of privilege was overruled and he has filed a separate appeal. The plea of privilege of Texas Western Securities, Inc., to be sued in Tom Green County, Texas, was overruled by the trial court and separately appealed in cause No. 7024 of this Court; and the plea of privilege of North American Union Life Insurance Company to be sued in Tom Green County, Texas, was sustained by the trial court and was separately appealed in cause No. 7022 of this Court. The appeals in causes Nos. 7022[1] and 7024 are disposed of by this Court in separate opinions in said causes, in which opinions supplementary statements are made and the judgments in each of said causes are affirmed. Texas Western Securities, Inc., v. Harrington, No. 7024, 308 S.W.2d 237. The judgment of the trial court in this cause is also affirmed.

Appellant's first point is as follows:

"The error of the Trial Court in overruling, and in not sustaining, Defendant's Plea of Privilege, since Plaintiffs failed to establish any actionable fraud was perpetrated by the Defendant upon the Plaintiffs in Gregg County, Texas."

Appellee's first counterpoint in answer to appellant's first point reads as follows:

"The uncontroverted proof in the case establishing beyond a doubt that W. S. Powers represented to these appellees that the assets of North American Union Life Insurance Company of approximately one-third of a million dollars were owned by only 45,000 shares of stock, when, in truth and in fact, the assets were owned by over 400,000 shares of stock and this fraudulent misrepresentation on which appellees' funds were obtained having been made in Longview, Gregg County, Texas, the trial court correctly overruled appellant's plea of privilege, because fraud is accountable where

committed, under the provisions of subdivision 7 of Article 1995, Texas Revised Civil Statutes."

The appellees were the minor daughters of H. M. Harrington, Jr., an attorney, who represents appellees herein. Mr. Harrington was the only witness who testified in the trial. Appellees in their brief state certain portions of the testimony of Mr. Harrington. We quote from appellees' brief as follows:

"On April 26, 1955, I left my office about 3:30 in the afternoon and in crossing the street I was called by Paul Avery to come over to meet a friend of his. Paul Avery at that time operated an insurance business in the side of the Hotel Longview, exactly across the street from my office building; I crossed the street and was introduced by Paul Avery to a W. S. Bill Powers. Mr. Powers at that time presented me with a card which I will offer as Plaintiffs' Exhibit No. 7. If the Court please, I will later have all of these photostated and furnish the reporter with the photostat of each.

"Mr. Powers explained to me that he was with the North American Union Life Insurance Company attempting to set up a business in this local area; that he was seeking to do it through two means, first, the establishment of a local agency with the intention that Paul Avery would take over and run the local agency; and second, by the creating of a sphere of influence by the sales of stock to certain of the Longview people which would create such an interest. He then explained to me that what he had for sale was shares of stock, selling for $7 per share, that he had a very limited number of shares for sale and would very much like to have my family participate.

"I explained to Mr. Powers that I did not personally invest in any securities, but that I had two daughters who frequently did. He wanted to know the ages of the daughters, and I told him the youngest daughter, Mary Sue Harrington, was then

1. Rehearing pending.

six years of age, she is nine years old today, this is her birthday; the oldest daughter was then eleven years of age, she is 13 years old now, her name is Nancy Kay Harrington. I then asked him to show me some facts that would show that this stock was worth $7 per share and specifically asked for a prospectus and for a balance sheet, and he told me he had neither. I then asked him, 'Well, what assets does the Company have?' And *he told me the Company owned a building in San Angelo and had assets of approximately one-third of a million dollars.* My next question was, 'Well, how many shares of stock are outstanding against that one-third of a million dollars?' *He told me he could not give the figure exactly but by dividing seven into one-third of a million I could get the approximate number of outstanding shares. That was done and the number of outstanding shares indicated was 45,000. The two of us together did that simple job, mathematical job.* I then took him out to my house, I had a car in the garage behind the Hilton Hotel, and Mr. Paul Avery and Mr. Powers and myself got in it and drove out to the house and went inside and my smallest daughter I remember was there because she came in with her dance costume on, she had just been to her dancing lesson, came in and Mr. Powers met the youngest daughter. At that time he filled out two purchase orders, which I now offer as Plaintiffs' Exhibits 8 and 9, and they were filled out and signed at the house—Nancy Harrington 8 and Mary Harrington 9. At that time and at the house on the same afternoon, I wrote out a check for the payment of Nancy Kay Harrington's 200 shares, drawn to the order of Texas Western Securities, Inc., in the amount of $1,400, drawn on the Commercial National Bank on the account of Nancy Kay and Mary Sue Harrington, and delivered it to Mr. Powers. We offer this check as Plaintiffs' Exhibit No. 10, together with the bank's endorsements or all endorsements on the back. The same is true of another check, written at the same time, on the same account, to the same payee, for the payment of Mary Sue Harrington's 200 shares which we offer as Plaintiffs' Exhibit No. 11.

"I next offer stock certificate No. 1933 issued by North American Union Life Insurance Company to Nancy Kay Harrington for 200 shares, which is dated April 27, 1955, signed by Robert H. Lynas, Secretary and J. B. Baumann, Executive Vice President, bearing the seal of the corporation, that will be Plaintiffs' Exhibit No. 12. We offer as Plaintiffs' Exhibit No. 13 a similar certificate No. 1932, issued for 200 shares to Mary Sue Harrington on the same date, bearing the signature of the same officers. I received the last two exhibits, the certificates of stock, enclosed in a letter from Texas Western Securities, Inc., dated April 27, 1955, signed by E. F. H. Roberts, Vice President, which letter I offer at this time as Plaintiffs' Exhibit No. 14.

"I at this time offer a letter, North American Union Life Insurance Company, dated March 1, 1956, signed by Charles Flesher, Assistant Secretary, in which he tells who Emory Roberts is, we offer that as Plaintiffs' Exhibit No. 15. (The exhibit, at S. F. 31, shows that the number of outstanding shares, in 1955, was 422,164. Exhibit No. 17, at S. F. 33, shows that the capital and surplus at the end of 1955 was $337,321.15, or approximately the one-third of a million dollars represented by Powers.) The statement contained within Charles Flesher's letter that there are over 438,000 shares of stock is so in variance with the statement made by Mr. Powers that there were 45,000, it makes a lie to his statement and creates a fraud in the valuation of the stock at $7, that many shares outstanding instead of being worth $7, the stock was worth 70¢.

"In documentary evidence, the court had before it plaintiffs' Exhibits No. 8 and No. 9, which are the stock subscription agreements signed respectively by the minor plaintiffs, as subscribers, and by the defendant W. S. Powers, as dealer or sales-

man, and are addressed to the two corporate defendants, specifically naming both."

In 20 Tex.Jur., pp. 59 and 60, it is stated:

"When once it is established that there has been any fraudulent misrepresentation * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: 'You, at least, who have stated what is untrue * * * for the purpose of driving me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty.'

"The rule is applicable even though the falsity of the representation might have been discovered by an investigation or by the exercise of ordinary diligence. *Indeed, the doctrine has in Texas been carried to the length of protecting innocent victims who showed childlike faith in relying on the misrepresentations of those who, as has been said, led them like lambs to the slaughter.*" (Italics ours.)

 We have carefully reviewed the record in this case and hold that the evidence in this case is sufficient to support a finding that appellant Powers committed actionable fraud against the appellees in Gregg County, Texas, in the manner outlined in appellees' first counterpoint. Appellees' first counterpoint is sustained and appellant's first point is overruled. See Chandler v. Butler, Tex.Civ.App., 284 S.W.2d 388 and authorities cited therein.

Appellees' second counterpoint in answer to appellant's points two through eight, inclusive, reads as follows:

"Error, if any, committed by the court in the consideration of excepted-to evidence dealing with other phases of the fraud perpetrated was harmless error, in view of the overwhelming quantity and quality of the evidence offered establishing the perpetration of a fraud by W. S. Powers in the misrepresentation what there were only 45,000 shares of stock outstanding, whereas, in truth and in fact, there were outstanding more than 400,000 shares."

We sustain appellees' second counterpoint and hold that appellant's Points 2 through 8, incl., do not present reversible error under this record. 3–B Tex.Jur., Sec. 1041, pp. 659–665, Sec. 1037, pp. 644-647, Sec. 904, p. 352, Sec. 941, pp. 457–463, and Sec. 942, p. 466.

The judgment of the trial court holding venue in this cause in Gregg County, Texas, as against the defendant W. S. Powers, is affirmed.